**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

BUR-TEX HOSIERY, INC., an Alabama corporation,

*Plaintiff,*

v.

YUNATI SHAHID, an individual; and PASHA SHAHID, an individual,

*Defendants.*

Civil Action No. 4:24-cv-4900

**BUR-TEX HOSIERY, INC.'S COMPLAINT**

Plaintiff Bur-Tex Hosiery, Inc. ("Bur-Tex") here brings its Complaint against Yunati Shahid and Pasha Shahid ("Defendants"), the managers of MedProtect Global Supplies LLC ("MedProtect") whose registration was forfeited pursuant to Section 171.309 of the Texas Tax Code on March 10, 2023.

**THE PARTIES**

1. Bur-Tex is a family-owned company with an address of 521 Paul Benefield Lane, Fyffe, Alabama, 35971, which is also its principal place of business. Bur-Tex is also incorporated in Alabama. Bur-Tex's principal business is the manufacture and sale of socks. During the COVID-19 pandemic, Bur-Tex tried to invest in a public service by procuring and selling personal protective equipment (PPE) such as medical gloves.

2. Defendant Yunati Shahid is a citizen of the State of Texas with an address of 11927 Waterford Estates Ct., Tomball, TX 77377-2714 in this District.

3. Defendant Pasha Shahid is a citizen of the State of Texas with an address of 11927 Waterford Estates Ct., Tomball, TX 77377-2714 in this District.

**JURISDICTION AND VENUE**

4. This is an action for fraud brought by an out-of-state plaintiff against completely diverse defendants in which the amount in controversy exceeds $75,000. Therefore, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5. The Court has personal jurisdiction over Defendants both because they are residents of this District, and because they (i) operated, conducted, engaged in, and/or carried on a business or business venture in this state and in this District; and/or (ii) committed a tortious act within this state and in this District, namely perpetrated the subject misconduct using a Texas LLC, MedProtect, whose place of business at all relevant times was in this District.

6. Venue is proper in this district under 28 U.S.C. § 1391. Defendants reside in this District, and MedProtect was formed and operated out of this District during the relevant time period.

**FACTUAL BACKGROUND**

7. Defendants were the managers of MedProtect and personally engaged in the accused misconduct herein.

8. Defendants knowingly used MedProtect during the COVID-19 pandemic to sell defective PPE. Among other things, Defendants knowingly and falsely advertised "Hong Sheng" brand medical gloves as being made of Nitrile, a high-quality material that commanded a significantly higher price than non-Nitrile gloves because of its suitability for a wide variety of medical uses and procedures that demand a high degree of safety to protect the user.

9. The MedProtect gloves were not, in fact, Nitrile, and Defendants knew this.

10. Defendants sold the "Hong Sheng" brand gloves, and others, in boxes that were labeled as Nitrile, an example of which is shown below from the shipment that Bur-Tex ultimately received and still possesses in its warehouse. Defendants also otherwise represented and warranted that the gloves were Nitrile. Defendants made these express representations with the knowledge and intent that their direct purchasers rely upon them and that downstream recipients of the gloves would rely on them too.

11. On or about November 2020, Bur-Tex contracted with a company called INOV8 Marketing, LLC ("INOV8") to source Nitrile gloves that Bur-Tex was obtaining on behalf of its customer, Cintas Corporation. INOV8 is a one-person LLC operated by Mr. Jack Safdeye, such that all references to INOV8 herein refer to him.

12. In early December 2020, Mr. Safdeye was engaged in discussions with Defendants about the procurement of Nitrile gloves for Bur-Tex. Mr. Safdeye told Defendant Pasha Shahid that Bur-Tex's needed Nitrile gloves. On or about December 4, 2020, Pasha Shahid specifically and knowingly falsely told Mr. Safdeye in a text that the gloves were Nitrile, and then texted Mr. Safdeye pictures of the boxes that were falsely labeled as "Nitrile," and texted a purported spec sheet that also claimed the gloves were Nitrile. Examples those texted images are shown below.

Nitrile Gloves

NITRILE GLOVES
POWDER FREE

PHYSICAL DIMENSIONS

| DIMENSIONS | Standards | |
|---|---|---|
| | VRG KHAI HOAN | ASTM D6319 |
| Length (mm) | 230 min | 220 min (XS, S)<br>230 min (M, L, XL) |
| Width (mm) | 75 ± 5 (XS)<br>85 ± 5 (S)<br>95 ± 5 (M)<br>105 ± 5 (L)<br>115 ± 5 (XL) | 70 ± 10 (XS)<br>80 ± 10 (S)<br>95 ± 10 (M)<br>110 ± 10 (L)<br>120 ± 10 (XL) |
| Thickness-<br>Single wall (mm) | Fingers : 0. 08 mm min<br>Palm : 0.06 mm min | Fingers : 0.050 mm min<br>Palm : 0.05 mm min |

13. Pasha Shahid also quoted, via text to Mr. Safdeye, a price of almost $15 per box, which was significantly more than a box of non-Nitrile gloves would have been, and was in the range of the market rate for authentic Nitrile gloves at that time. Thus, the quoted price itself falsely conveyed that the glove were Nitrile, when in fact they were not, and Defendants knew they were not.

14. Yunati Shahid jointly participated in the texts and other communications of Pasha Shahid, actively planning, preparing, and approving of all the false communications about the gloves supposedly being made of "Nitrile" as a co-conspirator in the same joint scheme to defraud. Yunati Shahid possessed all the knowledge that Pasha Shahid did (he likewise sold the gloves that were fraudulently labeled "Nitrile"), and was aware that they were jointly engaged in an active fraud. Each

acted as the other's agent, holding themselves out jointly as the managers of MedProtect, a single enterprise.

15. Defendants knew and expected that the representation that the gloves were Nitrile would be passed on to INOV8's customer and downstream recipients, and it was. Indeed – just as Defendants intended - INOV8 provided the information from MedProtect to Bur-Tex claiming that the gloves were Nitrile, including the photos of the "Nitrile" labeled boxes, and the quoted price. Relying on MedProtect's express representations that the gloves were Nitrile, Bur-Tex agreed to buy them and pay the high price of almost $15 per box.

16. On or about December 7, 2020, INOV8 contracted with Defendants (through MedProtect) to purchase 80,000 Nitrile glove boxes for Bur-Tex. INOV8 supplied Defendants with Bur-Tex's shipping instructions for delivery of the gloves to Cintas. On or about December 7, 2020, Pasha Shahid texted an invoice to Mr. Safdeye at INOV8 (**Exhibit A**) that again expressly confirmed that the gloves were Nitrile, and quoted the price at almost $15 per box. These representations were knowingly false at the time that they were made, and were made with the specific intent to defraud, and with the express knowledge that INOV8's customer, Bur-Tex, would be relying upon them. Once again, Yunati Shahid was jointly responsible and liable for the falsehoods communicated in the invoice, being fully aware of all the circumstances of the transaction, and having helped prepare the document, and working in active concert with Pasha Shahid to accomplish the fraud

17. Bur-Tex paid INOV8 a total of $1,208,000 so that INOV8 would pay MedProtect, which INOV8 then did, paying MedProtect on its $1,100,000 invoice. (The extra payment covered INOV8's commission.) On information and belief, Defendants personally received and shared the money that had been sent by Bur-Tex.

18. Nitrile gloves were in short supply during the COVID-19 pandemic, which was why Bur-Tex was willing to pay so high a price. Boxes of Nitrile gloves now sell for a fraction of the price that Bur-Tex paid.

19. On or about December 17, 2020, the gloves shipped out in the same packaging set forth above, falsely labeled as "Nitrile." Some weeks later, Cintas discovered, after opening the falsely-labeled (counterfeit) packaging, that the gloves sourced from Defendants were not Nitrile, and returned them to Bur-Tex.

20. Bur-Tex issued Cintas a full refund for the 80,000 returned boxes, leaving Bur-Tex out of pocket $1,208,000 for the defective gloves that it had purchased. Bur-Tex has since also had to pay storage costs and incurred other significant related losses on the fraudulently labeled gloves sold by Defendants totaling well beyond the out of pocket losses.

21. Bur-Tex initiated suit against INOV8 in October 2022 and that case is still ongoing. It has been through Bur-Tex's communications and dealings with INOV8 that Bur-Tex has gained information about Defendants and MedProtect.

22. Bur-Tex just recently learned of another lawsuit that was filed against Defendants making similar allegations as this one.

**CLAIM I – FRAUD**

23. Bur-Tex hereby incorporates paragraphs 1 through 22 as if fully set forth herein.

24. Bur-Tex brings this claim for fraud against both Defendants.

25. During the COVID-19 pandemic, Defendants knowingly sold defective medical gloves that were falsely labeled and advertised as Nitrile gloves, charging high rates for these on account of their supposedly being Nitrile. As described in detail *supra*, Defendants jointly conspired to defraud INOV8 – and its buyer, Bur-Tex – into buying low quality non-Nitrile gloves on the

promise and knowing false representation that the gloves were Nitrile. Defendants made these false representations with the intent that they be relied upon by Bur-Tex. Defendants knew at the time that the gloves were in fact not Nitrile, and their objective was to sell them at an exorbitant price and thereby unjustly enrich themselves. Defendants understood that the gloves were being supplied to Bur-Tex and that Bur-Tex was relying on Defendants' representations as to the composition of the gloves in paying $15 per box for them.

26. Because Defendants personally engaged in the claimed fraud, they are personally liable, notwithstanding the use of an LLC to commit the fraud.

27. Defendants have otherwise been sued for fraud based on similar allegations and have been on full notice of their misconduct, yet have failed to ever seek to compensate Bur-Tex.

28. Defendants have caused Bur-Tex direct losses well over the $1,208,000 that Bur-Tex paid for the defective gloves. Those losses include storage costs, interruption of business, legal expenses, and loss of reputation. Bur-Tex seeks damages to cover their losses.

29. Bur-Tex also seeks punitive damages due to Defendants' egregious conduct in falsely representing the nature of the gloves they were selling during a global pandemic when purchasers were relying on PPE for their health and safety.

**PRAYER FOR RELIEF**

Wherefore, Bur-Tex seeks:

(a) judgment that the Defendants have engaged in fraud;

(b) an award of damages to compensate Bur-Tex for its losses, punitive damages, pre- and post-judgment interest, costs and fees of this action; and

(c) such other relief as the Court may find just and proper.

**DEMAND FOR JURY TRIAL**

Bur-Tex hereby demands a trial by jury of all issues triable by a jury.

Dated: December 13, 2024

**FOLEY & LARDNER LLP**

*/s/ Todd A. Murray*
Todd A. Murray
State Bar No. 00794350
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: 214-999-4862
Email:tmurray@foley.com

COUNSEL TO BUR-TEX HOSIERY, INC.